FILED

01/29/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

August 6, 2019 Session

**STATE OF TENNESSEE v. KIMBERLY J. HILL**

**Appeal from the Circuit Court for Dyer County**
No. 17-CR-32    R. Lee Moore, Jr., Judge

_____

**No. W2018-01771-CCA-R3-CD**

_____

The Defendant, Kimberly J. Hill, entered a best interest plea to theft of property valued at $10,000 or more with the sentence to be determined by the trial court. Following a sentencing hearing, the trial court imposed a three-year sentence with six months to be served in confinement and the remainder on probation. On appeal, the Defendant asserts that the trial court erred in denying her request for judicial diversion and in imposing a term of split confinement. Upon reviewing the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, Kimberly J. Hill.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; and Danny H. Goodman, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant was indicted on one count of theft of property valued at $60,000 or more for diverting approximately $63,534.18 between November 18, 2009, and September 23, 2016, from Chimes for Charity, a charitable organization with which she was involved in Dyersburg, Tennessee. The indictment subsequently was amended to a

charge of theft of property valued at $10,000 or more, and the Defendant entered a best interest plea to the charge. Pursuant to the plea agreement, the parties agreed that the Defendant was Range I, standard offender and that her sentence was be determined by the trial court.

During the plea hearing, the prosecutor provided a brief recitation of the facts of the underlying offense. According to the prosecutor, on October 6, 2016, Ms. Rachel Craig, a member of the board of directors of Chimes for Charity, contacted law enforcement and reported that she had reviewed the organization's bank statements and that the account's balance was well below what it should have been. Ms. Craig reported that although the account generally maintained a balance of between $15,000 and $40,000, the account reflected a balance of $1,200. Ms. Craig discovered checks written to the Defendant bearing the signature of Ms. Amy Kaye Clark, another board member. When Ms. Craig showed the checks to Ms. Clark, Ms. Clark stated that someone had forged her signature on the checks. Ms. Craig and Ms. Clark confronted the Defendant, who immediately admitted that she wrote the checks and forged Ms. Clark's signature. The prosecutor stated that a total of sixty-seven checks "were received in this matter" and that the Defendant admitted to forging the signatures on the checks and taking the money. Defense counsel stated that numerous checks later were determined to be for valid charitable purposes, and the parties agreed to amend the indictment as a result.

During the sentencing hearing, the prosecutor announced that defense counsel provided receipts showing that almost $23,000 worth of checks written to the Defendant were for legitimate purposes. The prosecutor stated that the Defendant had paid almost $12,000 back to the charity's account. As a result, the parties agreed that the Defendant owed an additional $25,000 in restitution. The parties also agreed that the Defendant would forfeit her $20,000 cash bond and pay an additional $5,000 at the end of the sentencing hearing to satisfy the restitution.

The parties did not present any witnesses during the sentencing hearing. An investigation report prepared by the Tennessee Department of Correction, a presentence report, and copies of documents showing each case in which the trial court granted judicial diversion over the past year were entered into evidence.

According to the investigation and presentence reports, the fifty-seven-year-old Defendant had been married to her second husband since 2000 and was a lifelong resident of Dyer County. She reported her physical and mental health as "excellent" and reported no history of drug or alcohol abuse. She had no criminal history other than speeding citations and parking tickets.

The Defendant graduated from high school in May 1979 and obtained an associate's degree from Dyersburg State Community College and a bachelor's degree in organization management from Bethel University. She served as the Register of Deeds for Dyer County from September of 1994 until August of 2002, when she was not reelected. She had maintained employment for much of her adult life, performing office and clerical duties for various employers. At the time that she was indicted in February 2017, she was employed as a vice president for Metro Industrial Jobs, making $31.25 per hour. Her employment ended shortly after she was indicted. At the time that the reports were prepared, she was employed as an office manager for a car dealership, making $11.25 per hour. According to the "Strong R Assessment," the Defendant had a low risk of reoffending.

According to the investigation report, the Defendant was interviewed by a case officer two days after the plea hearing and made statements such as, "I wasn't trying to defraud anybody"; "I had no intent to take money"; and "I put my own personal money" into the charity's bank account. The Defendant stated that she had no reason to take money from the charity's bank account for her own personal use because she had earned a good salary from her employment for many years. According to the presentence report, the Defendant stated,

> I wasn't trying to defraud anyone. The records may have been sloppy, but I had no intent to take money or do anything wrong. I loved that organization. I put my own money in many times when it was short. I made a good salary, and I had no reason to take their money.

The Defendant also provided a typewritten statement, which was attached to both reports. She stated that she had been involved in Chimes for Charity for more than twenty-five years. Each year, the charity auctioned items donated by local businesses and used the money raised from the auction to throw a party for children in the community. The Defendant said she was responsible for ensuring that there were a sufficient number of items for the auction. She also made most of the bank deposits, wrote all of the checks, and arranged the advertising for the auction. Once the proceeds from the auction were collected, the Defendant oversaw the purchasing of toys, clothing, and food for as many as eight hundred children.

The Defendant stated that because fewer businesses donated items over the years, she and Ms. Clark began purchasing items for the auction. The Defendant said that while traveling for work, she purchased items using her personal credit card and reimbursed herself once she received her credit card statement. She said that she did not always reimburse herself promptly and that, at times, she did not reimburse herself at all. Because the Defendant did not see other board members on a daily or weekly basis, she

would write a check to herself and would sign either her own name or Ms. Clark's name to the check. The Defendant stated that at times, she did not reimburse herself for the entire amount of the purchase and considered the difference to be a donation to the charity. She said that she continued this practice for years without anyone questioning it and that audits had been conducted during that same time period.

The Defendant stated that other board members often obtained checks from the charity's bank account from her or instructed her to give money to people who needed help with rent, utility bills, or expenses for their children. Many of those who the charity helped did not have bank accounts and would have been charged by a bank or check cashing facility to cash a check. The Defendant said that as a result, she would accompany the person who was to receive the money to the bank where the charity's account was held, and she would provide the bank with a check written out to "cash" and then give the cash to the person once the Defendant received it from the bank.

The Defendant stated that when confronted about writing checks to herself and signing Ms. Clark's name, she informed those associated with the charity that she had receipts to support the payments. The Defendant believed she would be given the opportunity to meet with the board members and show them the receipts. The board members requested the charity's checkbook and documentation dating back three years, and the Defendant provided the materials to them without keeping copies for herself. A few weeks later, the board members requested paperwork dating back to 2009, and the Defendant provided the documentation while keeping copies for her own records. The Defendant stated that when she met with an investigator and the district attorney general, she was able to reduce the amount claimed to be owed from $65,000 to $27,000. The Defendant said that despite multiple requests by her attorney, she was not allowed to review the more recent documentation that she had provided but had not kept a copy for herself. She also said, "I honestly believe I could have drastically reduced the amount they say I owe to well under $10,000." She maintained that she deposited her own money into the charity's account whenever the balance in the account was low. She also stated, "I never had any children and helping with this was my way of helping children. All I ever wanted to do was to help other people. I gave away clothes and items we had in storage to people any time they came in."

Mr. John Holden, Ms. Carrie Burns, Ms. Clark, and Ms. Craig, all of whom were associated with Chimes for Charity, submitted victim impact statements in which they expressed disappointment in the actions of the Defendant, to whom they had entrusted the business aspects of the charity. They noted that the charity, which had been in existence for more than twenty-five years, had been dissolved. Ms. Craig expressed disappointment that the charity ended "in such a shameful and embarrassing way." Mr. Holden and Ms. Craig deferred to the trial court's judgment in determining the

appropriate sentence for the Defendant, and Ms. Burns and Ms. Clark felt that the Defendant should receive diversion.

The trial court took the matter under advisement and subsequently entered a detailed order denying the Defendant's request for judicial diversion. The trial court considered the documentation of the cases in which the court granted judicial diversion during the year prior to the Defendant's sentencing hearing but noted that, unlike the Defendant's case, the court granted judicial diversion in the prior cases because it had been agreed upon by the parties.

The trial court found that the Defendant's social history was "good" and that her physical and mental health appeared to be "good." The court noted that the Defendant was married and employed, appeared to be a life-long resident of Dyer County, was a high school and college graduate, and had no prior criminal history other than traffic citations.

The trial court stated that according to the presentence report, the Defendant had been involved in Chimes for Charity for more than twenty-five years. The court noted that the charity had a large fundraising effort every year between Thanksgiving and Christmas during which the charity auctioned off items donated by local businesses and used the proceeds to purchase "Christmas presents and other things for orphans." The trial court summarized the Defendant's written statement attached to her reports, as well as her statements to those who prepared the reports. The court found that "[i]t is simply not believable that checks were written by the [D]efendant as 'cash,' and also cashed by the [D]efendant to save a fee to the proper payee." The court considered the victim impact statements and noted that the charity "appears to no longer exist."

The trial court found that the Defendant was qualified for diversion, was amendable to correction, and "certainly could be rehabilitated." However, the court stated that the Defendant's "refusal to accept responsibility for her actions raises a clear question of whether she can be rehabilitated." The court noted that despite entering a plea to the charge, the Defendant continued to deny taking any money or doing anything wrong. The court stated that "[t]he fact that she wrote checks to cash and also wrote checks and signed the name of another worker in the Chimes for Charity Organization belies her position that she did not do anything wrong."

The trial court found that the Defendant misappropriated approximately $25,000 collected for the charity and that the parties agreed to restitution in the amount of $25,000, which had been paid. The court stated that the offense "was not simply a one time lapse of judgment of committing theft" but was a "systematic misappropriation of money over an extended period of time." The court described the circumstances of the

offense as "a series of offenses where [the Defendant] was misappropriating money designed to help people in need and to help orphans." The court found that the Defendant violated public trust by taking money from the charity. The court considered the deterrent value to the Defendant and others and whether judicial diversion would serve the interests of the public and the Defendant. The court found that while judicial diversion would serve the Defendant's interest, granting diversion to someone who committed "a series of thefts while violating the public trust," did not serve the interest of the public. The court noted that although the Defendant did not serve in an elected or appointment position with the government at the time of the theft, she previously served two terms as the Register of Deeds for Dyer County. Upon considering these factors, the trial court denied the Defendant's request for judicial diversion.

The trial court found that the Defendant was a Range I, standard offender and that the range of punishment for the theft offense was three to six years. The trial court imposed the minimum three-year sentence and required the Defendant to serve six months in confinement with the remainder of the sentence to be served on probation. The court stated that it was requiring a short period of confinement due to the fact that the offense involved an "ongoing series of thefts" and that the Defendant failed to accept responsibility for her actions. The court also considered that the Defendant violated public trust in the commission of the offense and forged another's name on some of the checks to conceal her actions. The court stated that "[a]lthough there was no evidence introduced at the sentencing hearing, this case is a highly publicized case that caused the termination of Chimes for Charity." The court found "a deterrent value to the public in an alternative sentence that requires some period of incarceration."

## ANALYSIS

### I. Judicial Diversion

The Defendant challenges the trial court's denial of her request for judicial diversion. She specifically contends that the trial court improperly considered information outside of the record, erred in focusing upon the circumstances of the offense and the interest of the public, and failed to properly weigh the factors. The State responds that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion.

Judicial diversion is a "'legislative largess'" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)); *see* T.C.A. § 40-35-313(a)(1)(A). If the defendant is successful in completing the probation assigned as part of judicial diversion, the charges

will be dismissed and the defendant may seek expungement. T.C.A. § 40-35-313(a)(2), (b). Upon successful completion, the defendant may be restored "'to the status the person occupied before the arrest or indictment or information.'" *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015) (quoting T.C.A. § 40-35-313(b)). The statute defines which defendants are qualified to apply for judicial diversion, and the parties here do not dispute that the Defendant was qualified to be considered for diversion. *See* T.C.A. § 40-35-313(a)(1)(B)(i). However, "[t]here is no presumption that a defendant is a favorable candidate for judicial diversion." *Dycus*, 456 S.W.3d at 929.

Like other sentencing decisions, the decision to grant or deny judicial diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012), applies to the decision to grant or deny judicial diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and place an explanation of its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

"Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *Id.* at 327. Substantial evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *State v. James Nathan Wilkerson*, No. W1999-00978-CCA-

R3-CD, 2000 WL 763971, at *2 (Tenn. Crim. App. June 8, 2000) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)); *see State v. Clark*, 452 S.W.3d 268, 280 (Tenn. 2014). The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *King*, 432 S.W.3d at 327. When the trial court has neglected to consider and weigh the factors, its decision may either be reviewed de novo or remanded for reconsideration by the trial court. *Id*. at 327-28.

The Defendant does not dispute that the trial court meticulously considered all of the factors listed in *Parker* and *Electroplating* but contends that the trial court did not adequately weigh the required factors. The trial court recognized the factors that reflected positively on the Defendant, such as her social history, her lack of a criminal history, and her mental and physical health. The trial court also extensively discussed those factors that reflected negatively on the Defendant, including the circumstances of the offense, the Defendant's failure to accept responsibility, her violation of public trust, and the interests of the public. While the trial court did not specifically "recite" the weight that it assigned to each factor, we infer from the denial of diversion and from the trial court's extensive discussion of the circumstances of the offense, the Defendant's failure to accept responsibility, and the violation of public trust involved in the offense that these factors were accorded greater weight. The trial court's heavy focus on these factors in reaching its decision regarding diversion satisfied the requirement that it "place[] on the record its reasons for granting or denying judicial diversion." *King*, 432 S.W.3d at 327. Accordingly, the presumption of reasonableness applies, and we will uphold the trial court's decision so long as there is any substantial evidence to support the decision. *See id*.

The trial court relied heavily upon the circumstances of the offense and the Defendant's failure to accept responsibility in denying judicial diversion. As the trial court noted, the conviction did not involve an isolated incident. Rather, the Defendant took advantage of her trusted position in the charity to take a large amount of money from the charity for almost seven years. The circumstances of the offense establish that the Defendant had a long-term, sustained intent to violate the law. This continued criminal behavior for a long period of time weighs heavily against the potential deterrence value of judicial diversion on the Defendant. *See Dycus*, 456 S.W.3d at 932.

Moreover, the money that the Defendant took was raised by the charity to benefit those in need, particularly children around the holidays. The Defendant contends that the trial court's statement in its order that the charity used the money to benefit "orphans" was not supported by the record. While the record reflects that the money raised by the charity was to benefit any child in the community who was in need and not just

- 8 -

"orphans," the Defendant has failed to demonstrate that the trial court's misstatement was material or that the status of the children mitigated the Defendant's conduct.

The Defendant also argues that the trial court erred in finding that she violated the public's trust because the charity was a private, non-profit organization. The Defendant, however, presented no evidence in the trial court regarding the manner in which the charity was organized. Rather, the record reflects that the Defendant took an active role in soliciting donations and otherwise raising money from members of the general public, representing to the public that the funds would be used to benefit those in need, and then taking the money for her own personal use. Thus, the record supports the trial court's finding that the Defendant violated public trust in committing the offense.

The trial court also heavily relied upon the Defendant's failure to accept responsibility for her actions. A defendant's unwillingness to accept responsibility is a relevant consideration to the denial of diversion. *See Electroplating, Inc.*, 990 S.W.2d at 230; *State v. Joshua Michael Ward*, No. E2018-01781-CCA-R3-CD, 2019 WL 3244991, at *6 (Tenn. Crim. App. July 19, 2019), *no perm. app. filed*. After entering a best interest plea, the Defendant provided a detailed typewritten statement in which she continued to insist that she did not do anything wrong, did not express any remorse for her actions, and offered various justifications for her actions. The trial court found that these justifications were not credible. This court has recognized that a defendant's lack of candor is a relevant consideration in the diversion context. *See State v. Willard Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *16 (Tenn. Crim. App. Mar. 12, 2019), *no perm. app. filed* (citing *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *State v. Dowdy*, 994 S.W.2d 301, 306 (Tenn. Crim. App. 1994)).

Finally, the Defendant argues that the trial court improperly considered that "this case is a highly publicized case" in denying judicial diversion when no evidence regarding such publicity was presented during the sentencing hearing. A trial court should not "'assume facts not in the record, base a sentence on extraneous facts, or take judicial notice of facts not available to this court nor included in the record transmitted to this court.'" *Nunley*, 22 S.W.3d at 287 (quoting *State v. Smith*, 735 S.W.2d 859, 864 (Tenn. Crim. App. 1987)). In its order, the trial court acknowledged that no evidence regarding publicity was presented during the sentencing hearing, and we conclude that the trial court should not have considered such publicity. Nevertheless, in determining whether this error warrants reversal, we must examine whether "the trial court's personal observations played a significant role in the exercise of judicial discretion." *See Vaughn v. Shelby Williams of Tennessee, Inc.*, 813 S.W.2d 132, 134 (Tenn. 1991). Reversal is not warranted when the trial court considers facts in the record and the statutory criteria and when its decision is "consistent with the purposes and principles of sentencing." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) ("Although the trial court erroneously

relied on a fact not in the record in support of the denial of probation, the court properly considered the statutory criteria as well as other facts and circumstances supported by the record.").

In the present case, although the trial court noted that the case was highly publicized, the court did not rely upon such publicity in denying the Defendant's request for judicial diversion. Rather, the trial court denied judicial diversion based upon the circumstances of the offense, the Defendant's failure to accept responsibility, her violation of public trust, and the interests of the public. Because the trial court based its decision on the factors set forth in *Parker* and *Electroplating*, the proof in the record, and the purposes and principles of sentencing, the trial court's error in noting that the case was highly publicized does not warrant reversal. Furthermore, the record includes substantial evidence to support the trial court's decision to deny judicial diversion, and, thus, we conclude that the trial court did not abuse its discretion.

## II. Manner of Service of Sentence

The Defendant challenges the trial court's order of split confinement. This court reviews a decision regarding alternative sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness when the sentence falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *Sihapanya*, 516 S.W.3d at 476. In reviewing for abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Id.* at 475.

The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmt. Likewise, the Defendant bears the burden of establishing that he is a suitable candidate for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not excluded by statute. T.C.A. § 40-35-303(a). Defendants who have committed the most severe offenses, whose criminal histories evince a clear disregard for the laws and morals of society, and who evince a failure of past efforts at rehabilitation are to receive priority for incarceration. T.C.A. § 40-35-102(5). A standard offender convicted of a Class C, D,

or E felony who does not fall into the categories listed above "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). The court "shall consider, but is not bound by" this guideline. T.C.A. § 40-35-102(6)(D).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(4), (5).

If a trial court denies probation based solely on a concern regarding the seriousness of the offense or solely on deterrence, this court must apply a "heightened standard of review." *Sihapanya*, 516 S.W.3d at 476. When probation is denied based solely on the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offense or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). When the denial of probation is based solely on deterrence, the record must establish that: "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). If however, the trial court's denial of probation was based on combining "the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense," the heightened standards of review articulated in *Trotter* and *Hooper* do not apply. *Sihapanya*, 516 S.W.3d at 476.

The Defendant asserts that she qualified as an especially mitigated offender rather than a standard offender. *See* T.C.A. § 40-35-109(a)(1), (2). However, according to the plea form signed by the Defendant, the parties agreed that the Defendant would be sentenced as a Range I, standard offender. Thus, the trial court properly sentenced the Defendant as a Range I, standard offender.

The Defendant also asserts that the trial court erred in ordering split confinement based upon the need for deterrence. The trial court found that a period of incarceration was warranted based upon the need for deterrence, the circumstances of the offense, and the Defendant's failure to accept responsibility. Because the trial court did not base its decision solely upon the need for deterrence or solely upon the circumstances of the offense, the heightened standard of review does not apply. *See Sihapanya*, 516 S.W.3d at 476. The trial court properly considered the statutory criteria and other facts and circumstances supported by the record. The trial court made extensive findings regarding the circumstances of the offense, including the sustained criminal intent and the Defendant's violation of public trust in committing the offense. The trial court also found that the Defendant failed to accept responsibility for the offense and that her explanation for her actions was not credible. This court has recognized that "'a criminal defendant's rehabilitative potential is a factor to be considered in the grant or denial of probation. Candor is a relevant factor is assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation.'" *State v. John Clayton Fields II*, No. M2014-01691-CCA-R3-CD, 2015 WL 4072503, at *6 (Tenn. Crim. App. July 6, 2015) (quoting *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002)). The trial court's determination is consistent with the purposes and principles of sentencing. Therefore, we conclude that the trial court did not abuse its discretion imposing a sentence of split confinement.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 12 -